In the second of two issues discussed in the main opinion, the opinion relies upon this court's 1991 decision in AlstonElectric Supply Co. v. Alabama Electrical Wholesalers, Inc.,586 So.2d 10 (Ala.Civ.App. 1991). In particular, I note that the main opinion focuses upon this court's statement in Alston ElectricSupply that the trial court's "scope of inquiry" when confronted with an issue as to the jurisdiction of a foreign court whose judgment is sought to be enforced in this state "is limited to (1) whether the issue of jurisdiction was fully and fairly litigated by the foreign court and (2) whether the issue of jurisdiction was finally decided by the foreign court."586 So.2d at 11. Given the difference in the posture of the present case and the posture of Alston Electric Supply, however, this statement does not go far enough in addressing the issues presently before us. This is so because Alston Electric Supply
is a case in which the foreign court had already taken up the issue of its own in personam jurisdiction and had entered an order with respect to that issue. The quoted limitation on the "scope of inquiry" of Alabama courts in which the jurisdiction of a foreign court is questioned is meant to apply in cases postured as was Alston Electric Supply, i.e., cases in which the foreign court has already issued a ruling relative to its personal jurisdiction over the defendant. This is so because, if the foreign court has issued such a ruling, the courts of this state are bound by principles of res judicata and full faith and credit to respect the order of the foreign court addressing that issue, at least where the issue was "fully and fairly litigated" and where the foreign court intended to enter a final judgment with respect to that issue. "`The principles of res judicata apply to questions of jurisdiction as well as to other issues.'" Treiniesv. Sunshine Mining Co., 308 U.S. 66, 78, 60 S.Ct. 44,84 L.Ed. 85 (1939) (quoting American Surety Co. v. Baldwin,287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231 (1932)).
In a case such as the present one, however, where the issue of the foreign court's jurisdiction has not yet been addressed by the foreign court (or in a case where, even if the issue has been addressed by the foreign court, the foreign court has not issued a final order based on a "full and fair litigation" of the issue), the quoted standard from Alston Electric Supply is not fully dispositive. Numerous decisions by our Supreme Court and by this court have repeatedly explained that the courts of this state may and should inquire into the jurisdiction of a foreign court whose judgment is sought to be enforced in this state and that, in so doing, the courts of this state are to make their own determination on the merits as to whether that *Page 121 
foreign judgment is void. See, e.g., Ex parte McNeil,778 So.2d 154 (Ala. 2000) (reversing trial court's determination that Florida court had personal jurisdiction over defendant, an Alabama resident, and holding that Florida court's judgment was void); and Ex parte Kenco Signs Awning Div., Inc.,732 So.2d 1019, 1023 (Ala.Civ.App. 1999) (affirming trial court's refusal to enforce foreign judgment on basis that foreign court lacked personal jurisdiction over defendant). See also Durfee v. Duke,375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) (holding that under the Full Faith and Credit Clause of the United States Constitution, a court in one state is generally required to give a judgment from a court in another state at least the res judicata effect that that judgment would be accorded in the state that rendered it); and Ex parte Lyon Fin. Servs., Inc.,775 So.2d 181, 183 (Ala. 2000) ("[F]iling a Rule 60(b) motion is the proper procedure for challenging the validity of a foreign judgment that has been domesticated in Alabama."). That is what has happened in the present case. The trial court heard evidence as to, inter alia, Miller Funeral Services's lack of contacts with the State of Georgia and entered an order determining that the Georgia court did not have in personam jurisdiction over Miller Funeral Services. Thus, it is on the authority of cases such as Ex parte McNeil and Kenco Signs that I believe that the denial of the petition for the writ of mandamus is appropriate in this case.
In addition, I would note that the validity of the Georgia court's judgment turns not just upon Georgia law, but also upon federal constitutional law, and particularly the right of Miller Funeral Services not to be required to defend an action in a state, in this case the State of Georgia, in which it does not have the requisite minimum contacts. See International Shoe Co.v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In other words, I believe that the principles articulated by the United States Supreme Court in International Shoe and its progeny would override Georgia procedural law, even if Georgia procedural law purported to provide that a foreign defendant waived a defense of lack of personal jurisdiction by failing to answer a complaint timely.
CRAWLEY, P.J., and BRYAN, J., concur.